CITIZENS UTILITIES COMPANY OF ILLINOIS, Petitioner, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents (The Village of Bolingbrook *et al.*, Intervenors).

Third District   Nos. 3—84—0412, 3—83—0498 cons.

Opinion filed June 17, 1985.

Daniel J. Kucera, of Chapman & Cutler, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (William J. Barzano, Jr., Assistant Attorney General, of Chicago, of counsel), for respondents.

Barry L. Moss and George A. Marchetti, both of Moss & Bloomberg, Ltd., of Bolingbrook, for intervenors.

JUSTICE SCOTT delivered the opinion of the court:

The appellant, Citizens Utilities Company, sought appellate review, pursuant to Supreme Court Rule 335, of two decisions of the Illinois Pollution Control Board (the Board). We found the factual background of both cases to be closely intertwined, with related issues presented in both cases. Accordingly, on our own motion, we ordered the cases consolidated for argument and decision.

The appellant, Citizens Utilities Company, operates a sewage treatment plant in Will County known as the West Suburban Wastewater Treatment Plant No. 1 (W.S.B. No. 1). The plant was originally built in 1960, with renovations being made in 1972. At the time it was constructed, the plant discharged treated water sufficient to meet secondary treatment standards. This discharge was released into the Lily Cache Creek, a tributary of the Du Page River and a part of the Du Page River Basin.

In 1972, pursuant to newly adopted environmental legislation, the Illinois Pollution Control Board adopted water quality standards applicable to all streams in Illinois. For the most part, the standards were "general use" standards, applicable uniformly to all streams, whether narrow creeks or wide rivers, no matter where located. In 1975, the Illinois Environmental Protection Agency (the Agency) issued a permit to the appellant imposing these "general use" standards on the discharge from W.S.B. No. 1. The effective date for implementation of the new "general use" standards was 1977.

According to the appellant, Lily Cache Creek has minimal aquatic life and no recreational uses. Because discharges into such a creek would not endanger aquatic life or recreational users, the appellant, in 1978, applied for a variance from the "general use" standards. The variance was temporarily allowed by the Board in an opinion and order dated March 5, 1981. The order contemplated that the appellant would petition the Board to abandon the "general use" standards with regard to W.S.B. No. 1, and adopt instead "site specific" standards which would be less stringent and yet sufficient given the limited uses for Lily Cache Creek. No guarantee was made that such "site specific" standards would be adopted, and it was clearly understood that the appellant would be expected to comply with whatever permanent standards were in effect by July 2, 1985.

Consistent with the March 5, 1981, opinion and order, the appellant petitioned the Board for new, less stringent, "site specific" standards for W.S.B. No. 1. Environmental studies were conducted, and the results of those studies were presented to the Board in hearings held on the petition. In accordance with section 4(c) of "An Act in relation to natural resources ***" (Ill. Rev. Stat. 1981, ch. 96½, par. 7404(c)), an economic impact study was conducted, the results of which were also included in the record of the Board's hearing on the petition. The Agency presented evidence at the hearing on the petition which generally opposed the substitute standards which were sought. At the conclusion of the hearings, on May 5, 1983, the Board, with one member dissenting, dismissed the petition for new standards, that is, for new regulations relative to W.S.B. No. 1, for want of proof. An appeal of this dismissal was docketed with this court. Hereafter, we shall refer to this as the first appeal.

Subsequently, the appellant learned that the Agency had commenced a joint study—with the U.S. Geological Survey—of the Du Page River Basin. The purpose of the study was to develop for each of the streams and rivers in the basin appropriate "site specific" standards for discharges into the waterways. These "site specific"

standards would replace the currently applicable "general use" standards, and would presumably be less stringent than the "general use" standards if justified by the character of the waterway. Believing that the joint study would result in less demanding standards for water discharged into Lily Cache Creek, the appellant filed yet another petition with the Board requesting an extension of the variance previously granted, an extension until the completion of the joint study. The appellant reasoned that any expenditure necessary to comply with the March 5, 1981, opinion and order might later be rendered unnecessary by a change in the standards applicable to W.S.B. No. 1 and Lily Cache Creek. At the same time, appellant was granted its request to hold in abeyance any action on the first appeal pending a decision by the Board on its petition for an extension. The Board refused to extend the variance period in an order dated April 19, 1984. What we shall refer to as the second appeal seeks our review of that refusal. Shortly after the second appeal was noticed, the first appeal was reactivated on appellant's motion.

As we noted at the outset, because of the related background and issues presented in both the first and second appeal by Citizens Utilities Company, we ordered the matters consolidated for oral argument and decision.

■ In urging that the Board erred in refusing to extend the variance, awaiting the results of the joint study, it is asserted that the Board illegally sought to penalize the appellant for its failure to comply with portions of the March 5, 1981, opinion and order. We have carefully analyzed the Board's written decision refusing the extension. We note that in order to qualify for a variance, one must demonstrate an "arbitrary or unreasonable hardship." (Ill. Rev. Stat. 1983, ch. 111½, par. 1035.) In discussing the evidence on this point, the Board properly considered the financial resources of the appellant. It also considered the reasonableness of compliance, with but 14 months before the July 2, 1985, deadline. The Board concluded that such a timetable was not unreasonable, in light of the unequivocal pronouncement in 1981 that July 2, 1985, was the absolute final deadline for compliance. In the course of reviewing the contents of that 1981 pronouncement, the Board recalled that several interim deadlines had not been met. While the appellant may ascribe penal motives to this reference to missed deadlines, it is, in fact, an accurate recitation of the history of appellant's long dispute with the Board. We will find no error in the Board's attempt to fairly relate the history of this dispute.

■ It is also asserted that to require the appellant to comply with the law, *i.e.*, the "general use" standards, when that law may be

modified in the future, presents an arbitrary and unreasonable hardship. No authority is cited. If ever the prospect of a future change in the law were justification for noncompliance with the law as it currently exists, such a rule cannot apply on these facts, where the prospect of change is so speculative. The conclusions of the joint study are unknown, and any changes recommended by those unknown conclusions are mere conjecture. If the speculative prospect of future changes in the law were to constitute an arbitrary and unreasonable hardship, then the law itself would be emasculated with variances, as there is always the prospect for future change. We find no error in the Board's refusal to extend the appellant's variance under these facts. Therefore we affirm the Board's action in our docket No. 3—84—412.

The Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 *et seq.*) mandates the Board to consider certain costs and benefits in any rule-making procedure.

"[B]efore the adoption of any proposed regulations, or amendment to existing regulations, the Board shall conduct hearings on the economic impact of those new regulations, and shall receive comments from the public regarding the study of the economic impact of those proposals prepared by the Department (of Energy and Natural Resources) ***. In adopting any such new regulation, the Board shall consider those elements detailed in the Department's study *** and other evidence in the public hearing record, as to whether the proposed regulation has any adverse economic impact on the people of the State of Illinois." (Ill. Rev. Stat. 1981, ch. 111½, par. 1027(b).)

Among the several issues raised in the first appeal, the appellant urges that the Board failed to make the "determination" required by section 27(b). In its written 1983 decision, the Board conceded that quantifying some of the costs and benefits in such an economic impact study "becomes nearly impossible." Yielding to the difficulty of the task, the Board faulted the report prepared by the Department of Energy and Natural Resources, finding it insufficient "to make a determination as to whether it is economically reasonable to maintain the general use water quality standards along the creek." The appellant argues that the Board cannot so quickly abdicate its statutory responsibility to weigh the economic costs and benefits, and that without the required determination, the administrative record is incomplete for review.

■ We note that the Board's determination as to economic impact is only required "[i]n adopting any *** new regulation." In the

instant case, the Board failed to adopt any new regulation. While the appellant sought to substitute "site specific" standards for "general use" standards, the Board declined to make the substitution, and the "general use" standards continued to apply as before. Although this technical reading of section 27(b) may excuse the Board's failure to determine the economic consequences of its action, we believe the narrow, technical reading of the statute would frustrate the legislature's intent to create some degree of economic accountability to "the people of the State of Illinois." The intent is to inject into the Board's decision-making equation a cost/benefit factor. Where, as here, the rejection of substitute regulations is in effect the adoption of a previously existing regulatory framework, the same economic accountability should be brought to bear. It follows, then, that we agree with the appellant. The Board cannot avoid the statutorily required economic determination, even though, as the Board opined, it is difficult to quantify certain "aesthetic impacts."

■ Where the administrative record is inadequate or incomplete, we must remand the proceeding for the making of a more complete record. (*Wicker Park Historic District Preservation Fund v. Pierce* (N.D. Ill. 1982), 565 F. Supp. 1066; *Board of Education v. Ingels* (1979), 75 Ill. App. 3d 334, 394 N.E.2d 69; *Sanderson v. De Kalb County Zoning Board* (1974), 24 Ill. App. 3d 107, 320 N.E.2d 54.) While shortcomings in the record might in some cases be the responsibility of the appealing party, and thus provide no basis for alleging error, such is not the case here. Here, the Illinois Pollution Control Board has the legal responsibility for making a determination of the costs and benefits, while the Department of Energy and Natural Resources has the legal responsibility for performing the study. The appellant, in order to receive a fair hearing, comporting with the statutory requirements, is entitled to have the Board confront the issue of the economic impact of the proposed regulatory change. Therefore, the first appeal, our docket No. 3—83—0498, must be remanded for further proceedings before the Board. Although other issues were raised by the appellant in the first appeal, those issues are not appropriate for review until the administrative record is complete. *Wicker Park Historic District Preservation Fund v. Pierce* (N.D. Ill. 1982), 565 F. Supp. 1066; *Board of Education v. Ingels* (1979), 75 Ill. App. 3d 334, 394 N.E.2d 69; *Sanderson v. De Kalb County Zoning Board* (1974), 24 Ill. App. 3d 107, 320 N.E.2d 54.

For the reasons set forth, and in reliance upon the authorities cited, we affirm the actions of the Illinois Pollution Control Board as presented in the case under our docket No. 3—84—0412, and we re-

mand the case under our docket No. 3—84—0498 to the Board for further proceedings consistent with the views expressed herein.

Judgment affirmed in No. 3—84—0412; cause remanded in No. 3—83—0498.

BARRY and STOUDER, JJ., concur.