CITIZENS UTILITIES COMPANY OF ILLINOIS, Petitioner-Appellant, v.
THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District No. 3—90—0704

Opinion filed July 16, 1991.—Rehearing denied August 26, 1991.

Chapman & Cutler, of Chicago (Daniel J. Kucera, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Elizabeth Wallace, Matthew J. Dunn, Joseph J. Annunzio, and William Seith, Assistant Attorneys General, of Chicago, of counsel), for respondent Pollution Control Board.

George A. Marchetti and Barry L. Moss, both of Moss & Bloomberg, Ltd., of Bolingbrook, for respondent Village of Bolingbrook.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Petitioner, Citizens Utilities Company of Illinois (Citizens), appeals from a ruling of the Illinois Pollution Control Board (Board). This is the fourth appeal to this court of the instant matter. This action involves a request by Citizens that the Board adopt certain site-specific water quality and effluent rules applicable to one of Citizens' wastewater treatment plants. A thorough summary of the procedural and factual background of this case can be found in the first two appeals. (See *Citizens Utilities Co. v. Pollution Control Board* (1985), 134 Ill. App. 3d 111, 479 N.E.2d 1213 (*Citizens I*); *Citizens Utilities Co. v. Pollution Control Board* (1987), 152 Ill. App. 3d 122, 504 N.E.2d 224 (*Citizens II*).) Meanwhile, we recently decided the third appeal of the instant matter. See *Citizens Utilities Co. v. Pollution Control Board* (1991), 213 Ill. App. 3d 864.

Briefly, Citizens operates a sewage treatment plant in Will County known as the West Suburban Wastewater Treatment Plant No. 1. At the time it was built, the plant discharged treated water sufficient to meet secondary treatment standards. This discharge was released into the Lily Cache Creek (Creek), a tributary of the Du Page River and a part of the Du Page River Basin. In 1972, pursuant to new legislation, the Board adopted water quality standards applicable to all streams in Illinois. For the most part, the standards were "general use" standards, applicable uniformly to all streams, whether narrow creeks or

wide streams, no matter where located. Citizens desires site-specific relief from the general use standards and has proposed its own modification from the general use standards.

■ Section 27(a) of the Environmental Protection Act (Act) provides in part:

"The Board may adopt substantive regulations *** [that] may make different provisions as required by circumstances for different contaminant sources and for different geographical areas *** and may include regulations specific to individual persons or sites. In promulgating regulations under this Act, the Board shall take into account the existing physical conditions, the character of the areas involved, including the character of surrounding land uses, zoning classifications, the nature of the *** receiving body of water, and the technical feasibility and economic reasonableness of measuring or reducing the particular type of pollution." Ill. Rev. Stat. 1989, ch. 111½, par. 1027(a).

Citizens contends that the Board failed to abide by our previous decision in *Citizens I*. In *Citizens I*, this court reversed the Board's order and directed the Board to determine the costs and benefits of Citizens' proposal. The Act requires the Board to make such a determination. (*Citizens Utilities Co. v. Pollution Control Board* (1985), 134 Ill. App. 3d 111, 116, 479 N.E.2d 1213.) The Board, however, failed to abide by our decision and make the necessary cost/benefit analysis at the economic impact hearings held on remand.

The Department of Energy and Natural Resources (DENR) is authorized to prepare an economic impact study regarding the proposed regulation. (Ill. Rev. Stat. 1989, ch. 96½, par. 7404(a).) The Board argues that the DENR study prepared in the instant case did not satisfy the cost/benefit evidence requirement and that Citizens actually had the burden of proof to show, on remand, that the general use standards were arbitrary, unreasonable, or capricious. The Board also blames Citizens for the inadequacies of the DENR study. This argument, however, ignores what this court held in *Citizens I*.

■ In *Citizens I*, this court decided that the obligation lies with the Board to make the required changes to the economic impact study should the Board feel that changes needed to be made and that it was up to the Board or the Illinois Environmental Protection Agency (IEPA) to add whatever additional evidence it deemed necessary to make the required cost/benefit analysis. Moreover, at the most recent hearing on remand, Citizens commented that it found the DENR study to be complete and that if the Board found the DENR study to

be incomplete, then the Board should supplement it. In response, the Board made no supplementation of the record.

After reviewing the DENR study, it is obvious why the Board chose to consider it incomplete and to give it little weight. The DENR study shows that the cost of forcing Citizens to comply with the general use standards far outweighs the few benefits to the creek that might accrue should Citizens make the modifications to its plant. The DENR study found that even assuming the most pessimistic assumptions regarding the negative impacts of Citizens' proposal are true, the cost/benefit ratio favors Citizens' proposal by a margin between 16 to 1 and 26 to 1. The DENR study concluded that "it is obvious that there are strong economic arguments for approving the Citizens proposal."

■■ The Board further ignored the dictates of *Citizens II* with respect to economic impact. Section 27(b) of the Act provides in relevant part:

> "The Board shall conduct at least one hearing on the economic impact of those new regulations, and shall receive comments from the public regarding the study of the economic impact of those proposals prepared by the Department ***. In adopting any such new regulation, the Board shall consider those elements detailed in the Department's study and the Board shall, in its written opinion, make a determination, based upon the Department's study and other evidence in the public hearing record, as to whether the proposed regulation has any adverse economic impact *on the people* of the State of Illinois." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 111½, par. 1027(b).)

In *Citizens II*, this court held that economic impact related to the impact on the community. (*Citizens Utilities Co. v. Pollution Control Board* (1987), 152 Ill. App. 3d 122, 504 N.E.2d 224.) The Board, however, focused on the reasonableness of the expenditure for Citizens. In essence, the Board erred in focusing on Citizens' ability to pay for the modifications to its plant without taking into account the economic impact on the ratepayers of Citizens in the form of increased rates.

■■ ■ In any case, this court is again confronted with an order of the Board decided without the Board making the required determination as to the economic impact of its decision. Where the administrative record is inadequate or incomplete, we must remand the proceeding for the making of a more complete record. Citizens, in order to receive a fair hearing, comporting with the statutory requirements, is entitled to have the Board confront the issue of the economic impact

of the proposed regulatory change. Therefore, this case must be remanded for further proceedings before the Board.

For these reasons, we vacate the decision of the Pollution Control Board and remand this case for further proceedings.

Reversed and remanded.

GORMAN and McCUSKEY, JJ., concur.